# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

RANDALL LEE FIELDS,

                 Petitioner,                Case Number: 2:06-CV-13373

v.                                      HON. VICTORIA A. ROBERTS

CAROL HOWES,

                 Respondent.

_____/

## OPINION AND ORDER CONDITIONALLY GRANTING
## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Randall Lee Fields is currently incarcerated at the Lakeland Correctional

Facility in Coldwater, Michigan.  He has filed a *pro se* petition for a writ of habeas corpus,

pursuant to 28 U.S.C. § 2254, challenging his convictions for two counts of third-degree criminal

sexual conduct.  For the reasons set forth below, the Court conditionally grants the petition.

### I.

Petitioner's convictions arise from the sexual assault of Travis Bice.  The Michigan

Court of Appeals summarized the facts adduced at trial and leading to Petitioner's convictions as

follows:

> The victim testified that he met defendant when he was approximately twelve
> years old through defendant's nephew whom the victim met on a school bus.
> Defendant lived across the street from the victim.  The victim also met James
> Philo, another adult, at defendant's house.  After the victim started "hanging out"
> with defendant, Philo moved into defendant's house and the three of them spent
> time together watching television and sometimes pornographic films.  The victim
> described one instance when, after consuming alcohol and smoking marijuana,
> the defendant and Philo went into the bedroom where defendant performed oral
> sex on the victim. Philo also placed his mouth on the victim's penis.  The victim
> testified that defendant performed oral sex on him on two separate occasions.
> Deputy Batterson testified that while defendant was in custody on an unrelated

domestic abuse matter, he was questioned about his relations with the victim.
Defendant provided a statement that corroborated the victim's testimony but
added that on one occasion he engaged in oral sex with Philo and the victim in a
motel in Toledo, Ohio and that he masturbated the victim on two other occasions.

*People v Fields*, No. 246041, slip op. at 1 (Mich. Ct. App. May 6, 2004).

The Court will discuss additional relevant facts below.

## II.

Following a jury trial in Lenawee County Circuit Court, Petitioner was convicted of two

counts of third-degree criminal sexual conduct. On December 5, 2002, he was sentenced to ten

to fifteen years' imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following

claims:

I.     The trial court violated Mr. Fields' due process rights by admitting his alleged
custodial statement where Mr. Fields was in custody in the county jail and the
Lenawee County sheriff interrogated him for as much as 7 hours without
providing *Miranda* warnings.

II.    Defendant was denied his due process right to a fair trial where he was on trial for
criminal sexual conduct and the prosecutor elicited other acts evidence through
witness testimony contrary to mre 404(b), because there was no logical relevance
and it was more prejudicial than prohibitive.

III.   The trial court clearly erred in finding that as a matter of law there were
substantial and compelling reasons to depart from the statutory sentencing
guidelines and abused it's sentencing discretion when imposing a sentence of 120
months to 180 months in prison, where the guidelines range called for a sentence
of 45 to 75 months.

The Michigan Court of Appeals affirmed the convictions. *People v. Fields*, No. 246041

(Mich. Ct. App. May 6, 2004).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising

the same claims raised in the court of appeals. The Michigan Supreme Court denied leave to

appeal.  *People v. Fields*, No. 126431 (Mich. Dec. 9, 2004).

Petitioner then filed the pending petition for a writ of habeas corpus.  He raises the same claims raised on direct appeal in state court.

## III.

## A.

Petitioner's claims are reviewed against the standards established by the Antiterrorism an Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  This Act "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising the question of effective assistance of counsel, as well as other constitutional claims.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir.1998).  Mere error by the state court will not justify issuance of the writ; rather, the state

3

court's application of federal law "must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. at 521 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)) (internal quotes omitted). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000) ("All factual findings by the state court are accepted by this Court unless they are clearly erroneous.").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n unreasonable application of federal law is different from an incorrect

4

application of federal law. . . .  Under § 2254(d)(1)'s "unreasonable application"
clause, then, a federal habeas court may not issue the writ simply because that
court concludes in its independent judgment that the relevant state-court decision
applied clearly established federal law erroneously or incorrectly.  Rather, that
application must also be unreasonable.

*Id*. at 409, 410-11.  *See also Dorchy v. Jones*, 398 F.3d 783, 787-88 (6th Cir. 2005); *McAdoo v.
Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003)
(en banc).

### B.

In his first habeas claim, Petitioner argues that admission of his confession was improper
because it was coerced.  Petitioner argues that police failed to advise him of his rights under
*Miranda v. Arizona*, 384 U.S. 436 (1966), before interrogating him for seven hours.

Petitioner claims that his statement to police was improperly admitted at trial because it
was involuntarily made.  Petitioner argues that his statement was involuntary because police
failed to end the interrogation when Petitioner asked to leave and Petitioner was not read his
rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).  The trial court conducted a hearing
to determine the voluntariness of Petitioner's statement to police.  Following the hearing, the
trial court determined that Petitioner, although in custody on another charge, was informed that
he was free to leave to interrogation room and that he knew he was free to leave and could
exercise that right at any time.  There was no dispute that Petitioner was not informed of his
*Miranda* rights.

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court
of Appeals, addressed this claim at length, holding, in pertinent part:

At trial, Deputy Batterson testified that he removed defendant from his cell,
where he was jailed on domestic assault, and led him to a conference room.  He

5

told defendant that he wanted to speak with him in regard to the victim whom defendant indicated he knew. The interview began around 7:00 or 9:00 p.m. and ended around midnight. Defendant was not read his *Miranda* rights, but Deputy Batterson told him he was free to leave the conference room and return to his jail cell. Deputy Batterson told defendant that there had been allegations of a sexual nature involving the victim. Defendant stated that he was a fatherly figure to the victim. Although defendant did not initially acknowledge any sexual relations, he ultimately stated that he had oral sex with the victim and masturbated him. He also stated that he witnessed oral sex between the victim and Philo. He stated that this occurred in the bedroom of his home in September. He also spoke of another incident involving himself, the victim and Philo at a Toledo, Ohio motel. With regard to *Miranda*[] warnings generally, this Court has long held:

> *Miranda* warnings are necessary only when the accused is interrogated while in custody, not simply when he is the focus of an investigation. Custodial interrogation is "'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" [*People v Herndon*, 246 Mich. App. 371, 395; 633 N.W.2d 376 (2001) (footnotes omitted).]

But with regard to interrogation of a defendant who is in custody on an unrelated matter, this Court has more recently held:

> "[I]n addition to the elements of 'custody' and 'interrogation,' there must be some nexus between these elements in order for Miranda to apply." That a defendant is in prison for an unrelated offense when being questioned does not, without more, mean that he was in custody for the purpose of determining whether *Miranda* warnings were required. [*Id.* at 396, quoting *People v Honeyman*, 215 Mich. App. 687, 694; 546 N.W.2d 719 (1996)].

Here, defendant was unquestionably in custody, but on a matter unrelated to the interrogation. Although defendant was not read his *Miranda* rights, he was told that he was free to leave the conference room and return to his cell. Defendant never asked to leave. Because *Miranda* warnings were not required, the trial court did not err in denying defendant's motion to suppress his statement.

*Fields*, slip op. at 2-3.

The procedural safeguards imposed by *Miranda* are designed "to safeguard the

uncounseled individual's Fifth Amendment privilege against self-incrimination . . . while in

6

police custody." *Thompson v. Keohane*, 516 U.S. 99, 107 (1995). Custody is determined by examining whether a reasonable person in the suspect's position would believe that he or she was free to leave. *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). *See also Standbury v. California*, 511 U.S. 318, 323 (1994) ("[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.").

In *Mathis v. United States*, 391 U.S. 1 (1968), the Supreme Court discussed whether *Miranda* warnings are required when a suspect is incarcerated on an unrelated charge. An Internal Revenue agent interviewed Mathis regarding federal charges while Mathis was serving a state sentence. At the subsequent federal trial, Mathis attempted to suppress his statement to the governmental agent on the ground that the agent had not read the *Miranda* warnings to him before interrogating him. The District Court rejected this argument, and the Court of Appeals affirmed Mathis' convictions. The Supreme Court, however, held that *Miranda* called for reversal. The Government argued that *Miranda* warnings were unnecessary because Mathis was in custody on an entirely separate offense and was not placed in custody by the officer who questioned him. The Supreme Court, however, stated that this distinction was "too minor and shadowy to justify a departure from the well-considered conclusions of *Miranda* with reference to warnings to be given to a person held in custody." *Id* at 4. The Supreme Court found "nothing in the *Miranda* opinion which calls for a curtailment of the warnings to be given persons under interrogation by officers based on the reason why the person is in custody." *Id.* at 4-5.

> A rule that persons in prison are in custody and must be advised of their rights prior to questioning is fully consistent with the logic underlying *Miranda* and

> *Mathis.* *Miranda* established a prophylactic rule intended to ensure that suspects
> are not coerced into confessing. *See Berkemer*, 104 S. Ct. at 3147; see also
> *Henry*, 447 U.S. at 273-74, 100 S. Ct. at 2188. The rule was designed for
> situations believed to be intrinsically coercive and susceptible of abuse. *See
> Miranda*, 384 U.S. at 467, 86 S. Ct. at 1624 ("inherently compelling pressures
> which work to undermine the individual's will to resist and to compel him to
> speak where he would not otherwise do so freely"); *see also Minnesota v.
> Murphy*, 465 U.S. 420, 104 S. Ct. 1136, 1144, 79 L. Ed.2d 409 (1984). Prison is
> certainly a "police dominated" surrounding that is inherently coercive. *See
> Berkemer*, 104 S.Ct. at 3150, 3150 n. 28. *Miranda* recognized the powerful
> psychological effect on a person confined, alone with his interrogator, which
> often induces the individual to reach for aid. 384 U.S. at 448-55, 86 S. Ct. at
> 1614-17. This powerful influence is certainly present when the individual is
> confined in prison. *See Henry*, 447 U.S. at 273-74, 100 S. Ct. at 2188.
> Furthermore, the coercion inherent in custodial interrogation derives in large part
> from the knowledge of the accused that he cannot escape his interrogator, and that
> the questioning can continue until the desired answer is obtained. *See Miranda*,
> 384 U.S. at 468, 86 S. Ct. at 1624; *see also Murphy*, 104 S. Ct. at 1145-46. In
> *Murphy*, the Court discussed the situation where "a suspect ... is painfully aware
> that he literally cannot escape a persistent custodial interrogator." 104 S.Ct. at
> 1146. It would be hard to conceive of a situation where the accused was less able
> to escape his interrogator than in a prison setting.

*U.S. v. Cadmus*, 614 F. Supp. 367, 372 (D.C. N.Y. 1985).

Although some federal circuit courts have restricted *Mathis*, see, e.g., *Cervantes v. Walker*, 589 F.2d 424, 427 (9th Cir.1978), this Court is bound by clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1); *King v. Trippett*, 192 F.3d 517, 523 n. 2 (6th Cir.1999). The Supreme Court determined in *Mathis* that the petitioner was "in custody" and entitled to *Miranda* warnings before a federal agent interrogated him about an offense unrelated to the one for which he was incarcerated. The court of appeals' decision was contrary to and an unreasonable application of *Mathis*.

In support of his claim that *Mathis* does not require *Miranda* warnings where a prisoner is questioned regarding a crime unrelated to that for which he is incarcerated, Respondent cites a handful of cases. The two cited Sixth Circuit cases are inapposite to the pending case. First, in

*United States v. Ozuna*, 170 F.3d 654 (1999), the Court of Appeals addressed whether customs inspectors should have given *Miranda* warnings prior to questioning defendant as he tried to enter the country at the United States/Canadian border. The Court noted in dicta that in determining whether a suspect is in custody, particular attention must be paid to surrounding circumstances. *Id.* at 658, n.3. The Court noted that the Ninth Circuit Court of Appeals has held that prisoners "are not free to leave their prisons, but *Miranda* warnings need not precede questioning until there has been a 'restriction of [the prisoner's] freedom over and above that of his normal prisoner setting.'" *Id.*, *quoting Cervantes v. Walker*, 589 F.2d 424, 428 (9th Cir. 1978). The Court of Appeals' citation to *Cervantes* was dicta and certainly did not and could not overrule the Supreme Court's decision in *Mathis*. Thus, while the citation to *Cervantes* indicates some disagreement with *Mathis* it is not an invitation to disregard *Mathis*.

Second, Respondent cites the Sixth Circuit's decision in *United States v. Salvo*, 133 F.3d 943 (6th Cir. 1998). In *Salvo*, the government challenged a district court's suppression of defendant's statements to FBI agents. The statements were made during a search of his residence by the agents, who did not read him his *Miranda* rights prior to taking his statement. The Court of Appeals held that the statement was not properly suppressed because the defendant was not in custody at the time he was questioned and, therefore, *Miranda* warnings were not required. In determining that defendant was not in custody, the court considered the totality of the circumstances presented. None of those circumstances is similar to those at issue here, that is, none involved a defendant who was clearly already in custody when questioned on an unrelated charge. Thus, while *Salvo* may be instructive regarding in custody determinations for non-prisoners, it does not bear upon the claim at issue in this case and does not narrow the

9

Supreme Court's holding in *Mathis*.

*Mathis* clearly states that *Miranda* warnings are required when a suspect is in custody regardless of the reason why the suspect is in custody. The Michigan Court of Appeals' conclusion that investigators were not required to advise Petitioner of his *Miranda* rights because his custody was unrelated to the crime under investigation is an unreasonable application of *Mathis*. The Court's inquiry, however, does not end there. Admission of an involuntary confession is subject to harmless-error analysis. *Arizona v. Fulminante*, 499 U.S. 279, 308 (1991).

In a habeas corpus proceeding, to determine whether a constitutional trial error is harmless, a federal court must decide whether the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), *quoting Kotteakos v. U.S.*, 328 U.S. 750, 776 (1946). "This standard reflects the 'presumption of finality and legality' that attaches to a conviction at the conclusion of direct review." *Calderon v. Coleman*, 525 U.S. 141, 145 (1998), *quoting Brecht*, 507 U.S. at 633. "It protects the State's sovereign interest in punishing offenders and its good-faith attempts to honor constitutional rights, . . . while ensuring that the extraordinary remedy of habeas corpus is available to those whom society has grievously wronged." *Id.* (internal quotations omitted).

If a federal judge in a habeas proceeding "is in grave doubt about whether a trial error of federal law has substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless. And, the Petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation omitted). The Court may not grant habeas corpus relief if it concludes that "the state court simply erred in concluding that the State's errors were harmless; rather

10

habeas relief is appropriate only if the [state court] applied the harmless-error review in an

'objectively unreasonable' manner." *Mitchell v. Esperanza*, 540 U.S. 12, 18 (2003).

In considering whether the admission of a coerced confession was harmless, "the risk

that the confession is unreliable, coupled with the profound impact that the confession has upon

the jury, requires a reviewing court to exercise extreme caution before determining that the

admission of the confession at trial was harmless." *Fulminante*, 499 U.S. at 296.

> A confession is like no other evidence. Indeed, "the defendant's own confession
> is probably the most probative and damaging evidence that can be admitted
> against him . . . [T]he admissions of a defendant come from the actor himself, the
> most knowledgeable and unimpeachable source of information about his past
> conduct. Certainly, confessions have a profound impact on the jury, so much so
> that we may justifiably doubt its ability to put them out of mind even if told to do
> so." *Bruton v. United States*, 391 U.S. at 139-140, 88 S. Ct. at 1630 (White, J.,
> dissenting). . . . While some statements by a defendant may concern isolated
> aspects of the crime or may be incriminating only when linked to other evidence,
> a full confession in which the defendant discloses the motive for and means of a
> crime may tempt the jury to rely upon that evidence alone in reaching its decision.

*Id.*

In *Fulminante*, the Supreme Court held that the admission of defendant's confession was

not harmless error. Fulminante was convicted of murdering his 11-year-old stepdaughter.

Police lacked any physical evidence connecting Fulminante to the crime. He was ultimately

prosecuted only after authorities learned that, while incarcerated on an unrelated charge, he

confessed to the killing to an inmate, Anthony Sarivola, a former police officer who was

working as a paid informant for the FBI. Following his release from prison, Fulminante also

confessed to Sarivola's wife. Both confessions were admitted at trial.

The Supreme Court held that the first confession was coerced. The Court further held

that the admission of a coerced confession is subject to the harmless-error analysis, and, after

evaluating the evidence presented, that it was not harmless error in this case. *Id.* at 306-09, 295-302. In reaching this conclusion, the Supreme Court considered three main factors. First, absent the confessions, it was unlikely Fulminante would have been prosecuted because the physical evidence from the scene and other circumstantial evidence would have been insufficient to convict. *Id.* at 297. The prosecutor acknowledged the importance of the confession in both his opening and closing statements. Second, the jury's assessment of the reliability of Sarivola's wife's testimony regarding the second confession may have been influenced by the existence of the first, coerced confession. Absent testimony regarding the first confession, jurors may have been more skeptical of Sarivola's wife's testimony, particularly because she had a motive to lie in that both she and her husband received significant benefits for their testimony. *Id.* at 298-99. Finally, admission of the first confession led to the admission of other prejudicial evidence against Fulminante. *Id.* at 300. Based upon the foregoing, the Court concluded that the admission of Fulminante's first, coerced confession was not harmless error.

In this case, there were essentially two pieces of evidence against Petitioner: the victim's testimony and Petitioner's confession. The victim, Travis Bice's testimony, however, was far less clearly incriminating than the Michigan Court of Appeals' summary of testimony would indicate. In the time leading up to trial, Bice told at least five individuals, including two law enforcement officers, that the sexual conduct with Petitioner never occurred. During his direct examination, Bice refused to describe for the jury what he understood "oral sex" to mean. Following a brief recess, the prosecutor asked the trial court judge if her examination of Bice could resume outside the presence of the jury because she believed Bice was going to recant his testimony. The trial court judge instead recessed for lunch. Following lunch, Bice continued his

12

testimony.  At that point, Bice did not recant and, in fact, incriminated Petitioner.

Considering that a "defendant's own confession is probably the most probative and damaging evidence that can be admitted against him," *id.* at 296, that the evidence against Petitioner was far from overwhelming, and that the victim recanted his allegations several times, the Court is in "grave doubt" about whether admission of the coerced confession had "substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation omitted).  Accordingly, the error was not harmless and the Court grants habeas corpus relief on this claim.

## C.

Petitioner next argues that the trial court erred in admitting other act evidence regarding uncharged sexual relations he had with the victim and in admitting testimony that another adult, James Philo, who lived at Petitioner's house, also engaged in sexual acts with the victim.  The Michigan Court of Appeals held that the testimony was properly admitted as part of the *res gestae* of the offenses.  The court noted that the testimony demonstrated how Petitioner fostered a relationship between himself and the victim and Philo and the victim and concluded that "[t]hese acts were so blended with the crimes defendant was charged with that they incidentally explained the circumstances fo those crimes." *Fields,* slip op. at 4.

The United States Supreme Court has declined to hold that the admission of similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53, 110 S. Ct. 668, 674-75 (1990). Although the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496

13

(1988), it has not explicitly addressed the issue in constitutional terms. Therefore, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.2003). Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id.* at 513. Petitioner's challenge to the admission of the prior bad acts evidence, therefore, does not warrant habeas relief.

## D.

Finally, Petitioner argues that the trial court failed to set forth any substantial and compelling reasons for departing from the sentencing guidelines. The guidelines range was 45 to 75 months, and Petitioner was sentenced to 120 to 180 months.

Under Mich. Comp. Laws § 769.34(3), a trial court must provide substantial and compelling reasons for departing from state sentencing guidelines. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Whether a sentencing court had substantial and compelling reasons for departing from the sentencing guidelines is a matter of state law. *Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003) (holding that a state court's application of sentencing guidelines is a matter of state concern only); *see also McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich.2001); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999). Thus, this claim is not cognizable on federal habeas review.

## IV.

14

The Court concludes that the Michigan Court of Appeals' decision that Petitioner's confession was properly admitted was an unreasonable application of *Mathis v. United States*, 391 U.S. 1 (1968).  The Court further finds that the error was not harmless.

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus is **CONDITIONALLY GRANTED**.

Unless a date for a new trial is scheduled within ninety days, Petitioner Fields must be unconditionally released.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  February 9, 2009

The undersigned certifies that a copy of this document was served on the attorneys of record and Randall Lee Fields by electronic means or U.S. Mail on February 9, 2009.

s/Carol A. Pinegar
Deputy Clerk

15